RICHARDSON ET AL. *v*. SLOUGH ET AL.

[No. 18,947. Filed January 28, 1958. Rehearing denied March 7, 1958. Transfer denied April 23, 1958.]

*Roy Sheneman,* of Plymouth, *F. L. Wiltrout* and *Raymer & Wiltrout,* of Elkhart, for appellants.

*Stevens & Wampler,* of Plymouth, for appellees.

KELLEY, C. J.—Appellees filed complaint against appellant, Paul Richardson, for wages for work and labor from August 1, 1953, to May 29, 1954, together with affidavit for attachment and bond. The attachment affidavit was in usual form and alleged two grounds for attachment, (1) that Richardson is not a resident of the State of Indiana, and (2) that Richardson has sold and disposed of his property subject to execution with fraudulent intent to cheat appellees of their claims against him.

A Writ of Attachment was issued and returned by the Sheriff—no property found.

Appellees then filed a verified amended and supplemental complaint alleging wages due, reciting previous

attachment complaint, bond, writ, and return, and that the defendant, Paul Richardson, had sold his hotel and tavern business (Koontz Lake Hotel, Ind.) and that one Roy Sheneman was escrow agent holding approximately $1,340.00 to be turned over to Paul Richardson after payment of bills; that it is not determined to whom the money belongs; that Roy Sheneman should be made a party defendant and ordered to hold funds until appellants could prove their claim and until order as to how funds should be disposed of. An "Order of Attachment" and issuance of proper notice was prayed for.

The court ordered that Sheneman be made a party, that he hold the funds held by him as escrow agent until a proper order could be entered after hearing, and that a copy of the order be served on him. He was duly served.

Appellees then filed a non-residence affidavit as to Paul Richardson and publication was ordered and duly made.

Appellant Paul Richardson appeared by his attorney, the appellant Roy Sheneman. He filed answer in denial of the original complaint and an answer in admission and denial of the supplemental complaint. Said Roy Sheneman filed his answer to the supplemental complaint as "Garnishee Defendant" and said in substance: that Richardson and one Hays and his son consulted him about the purchase by the latter of the former's hotel (referred to as shares of capital stock of Koontz Lake Hotel, Ind.) and agreement was reached for sale of the stock and the purchase price was paid, excepting a balance of $1,500.00 which was held back pending delivery of possession of the hotel premises and it was agreed that "at the time of the surrender and transfer of the . . . stock . . . the balance" of $1,500.00 would be paid; that Hays and

Hays were placed in possession of the hotel and thereafter a dispute arose over some equipment which Hays said was missing; that Paul Richardson and his family "returned to their native state of Tennessee" without receiving the balance of the purchase price or settling the dispute (amounting to $159.60), and without transferring the stock; that about September 14, 1954, Hays paid to him (Sheneman) $1,340.40, being the balance of $1,500.00 less the $159.60 (disputed equipment), and the dispute has never been settled; that Richardson owed Sheneman $225.00 attorney fees and on September 10, 1954, Richardson "addressed a written order" to Hays to pay Sheneman the $225.00 and "deduct from the $1,500 still owing" Richardson, and that Sheneman has the actual amount of $1,115.40 on hand and "that this Garnishee Defendant cannot determine whose money it is, due to the facts stated."

On said issues the cause went to trial before the court—without a jury.

The court, in the absence of any request for special findings, made a general finding, and found for appellee, Clara Slough, and that she is entitled to recover $800.00 of appellant Paul Richardson, and the court found against appellee, Fred Slough, and that he recover nothing. The court further found that Sheneman had in his possession funds belonging to Paul Richardson in the sum of $1,115.40 and that the garnishee defendant should be ordered to pay to the Clerk of the Court the sum of $800.00 in satisfaction of the judgment. Consistent judgment for appellee, Clara Slough, followed the finding for her, and it was "ordered" that "the Garnishee Defendant, Roy Sheneman, pay from the funds in his hands the sum of . . . ($800.00) and the costs of this action," to the Clerk of the Court for the benefit of Clara Slough, in satisfaction of said judgment.

The motion for new trial is grounded on the insufficiency of the evidence to sustain the decision, that the decision is contrary to law, and that the amount of recovery is too large. The latter ground is not argued. The assignment of error is the overruling of the new trial motion and error in overruling appellants' motion to modify judgment. This latter error is not argued. We consider only the specifications of insufficiency of the evidence and that the decision is contrary to law.

Appellant, Paul Richardson, the principal defendant in the attachment proceedings, makes no contention of error in the judgment as against him. Appellant, Roy Sheneman, the garnishee defendant, makes no complaint of the judgment against said principal defendant, Paul Richardson. Appellants state in their brief: "The part challenged is that part with reference to the judgment against the garnishee defendant, appellant Sheneman." The judgment, then, as to the principal defendant, appellant Richardson, may be considered final.

Appellant, Sheneman, asserts that the judgment against him is contrary to law because (1) A personal judgment only was taken against the attachment defendant, Paul Richardson, without any adjudication by the court of the issues in attachment, and, therefore, he, as garnishee-defendant, was discharged and the judgment against him is erroneous; and (2) The judgment against him contravenes the express provisions of Sec. 3-532, Burns' 1946 Replacement, in that he is required by the judgment to violate the terms of his escrow which was to turn over to Richardson the money placed in his hands by said Hays and Hays when the former delivered to him the corporate stock sold to the latter, which Richardson has not done.

The record is devoid of any evidence to support the ground of attachment asserted in the attachment affi-

davit that the appellant, Richardson, had sold and disposed of his property subject to execution with the fraudulent intent to cheat the appellees in the collection of their claim. That ground for attachment will not be further noticed. However, the record is replete with evidence that said Richardson, at the time of the filing of the attachment proceedings was not a resident of the State of Indiana. He testified that he lived in Nashville, Tennessee, and the answer of appellant, Roy Sheneman, as garnishee-defendant, stated that after Richardson had placed Hays and Hays in possession of the hotel, Richardson "and his family returned to their native state of Tennessee." There is not one word of evidence contradicting the allegation that Richardson was a non-resident of this state.

Richardson's appearance was general and his answer denied all the allegations of the original and supplemental complaint, except three rhetorical paragraphs of the supplemental complaint which were admitted by him. "The rule is (applicable to attachment as well as other suits), that a general appearance waives all irregularities that are not jurisdictional, and it waives such jurisdictional objections as are susceptible of being waived: *such as that of non-residence.* . . . A general, voluntary, unconditional appearance is equal to the personal service and return of summons. . . . the effect of appearance would be the giving of jurisdiction over him as a personal party, *so that judgment need not be confined in its operation to the property attached.*" Waples on Attachment and Garnishment, Second Edition, Sec. 665, page 461. (Italics supplied.) It would seem, then, that the court acquired full and complete jurisdiction over the cause and the principal defendant, Richardson, with the same force and binding effect as if Richardson had been personally served with process. The

garnishee defendant, appellant Sheneman, having appeared generally, pursuant to the order served upon him, and having filed his answer to the supplemental complaint in garnishment, likewise vested the court with full and complete jurisdiction over him.

It thus appearing from the record that the court possessed unqualified jurisdiction over the subject matter of the action and over the person of the principal defendant and the garnishee, the principles announced by the court in the case of *Earl et al.* v. *Matheney* (1877), 60 Ind. 202, 204, seem decisive of the appellant, Sheneman's, first contention. The court there said:

"When, in an attachment proceeding, the only jurisdiction obtained is over the property attached, the basis of the jurisdiction is the attachment; and, if that is without legal authority, the proceedings under it will be *coram non judice* and void; but, when jurisdiction is obtained by the service of process on the defendant, *the attachment is not the foundation of the jurisdiction, but merely an ancillary remedy allowed to the plaintiff for the purpose of securing his demand;* and in such case, although the attachment may have been illegally issued, *yet it is the privilege of the defendant alone to take advantage of it;* and, *if he waives such illegality,* and the effects in the garnishee's hands are subject to the payment of his debt, *the sufficiency of the proceedings can not afterwards be questioned to protect the garnishee.* If the court has jurisdiction over the defendant, and the garnishee wishes to question the jurisdiction over himself, he must do so *in limine;* for, *if he answers,* and judgment is rendered against him, *he will be bound thereby, even on an appeal;* . . . . And, *when the jurisdiction has been established over both the defendant and the garnishee,* the *latter has no further right to interfere with, or inquire into, the proceedings in the main action between the plaintiff and the defendant;* for all that he is interested in is, that the attachment proceedings shall protect him against a second payment of the same debt; and this will be the case, although there

may be errors and irregularities in the main proceedings for which the defendant might obtain a reversal of the judgment. *It has, therefore, been uniformly held, that a garnishee can not reverse or avoid a judgment on account of mere errors or irregularities in the proceedings in the principal action.* They affect only the defendant, who alone can take advantage of them, and then only by appeal." (Citing a host of authority.) (Our emphasis.)

To the same effect, see *Schoppenhast* v. *Bollman and Wife* (1863), 21 Ind. 280, 285; *Drake on Attachment,* Seventh Edition, Sec. 697, page 625, also Sections 692, 693, and 695, pages 621, 622, and 623; *Shinn on Attachment and Garnishment,* Vol. 1, Sec. 5(d), page 8, note 4; *The Ohio and Mississippi Railway Company* v. *Alvey* (1873), 43 Ind. 180, 182.

As previously stated, appellant, Richardson, the principal defendant below, asserts no error in the judgment and the same is considered final as to him. As he alone is privileged to take advantage of any claimed errors or irregularities in the proceedings in the principal action, as shown by the authorities aforesaid, the appellant garnishee, Sheneman, is "bound thereby, even on appeal." The authorities relied upon by the garnishee appellant do not serve him because, first, they were cases where the trial court, in attachment proceedings, made no findings as to the issues in attachment and entered only a personal judgment against the principal defendant; and second, in the instant case, by reason of the voluntary appearance and answer of the principal defendant and the consequent jurisdiction of the court over him, the attachment was not the foundation of the court's jurisdiction, but was "merely an ancillary remedy allowed to the plaintiff (appellees) for the purpose of securing his (their) demand." (Quotes from *Earl et al.* v. *Matheney,*

*supra.*) Appellants' first contention, above particularly referred to, is, we think, without substance.

Turning now to the second contention of the garnishee appellant, it becomes necessary to determine whether the evidence undisputedly sustains the contention that the money in his hands from Hays and Hays was not to be paid over to Richardson prior to the garnishee's receipt of the stock, which never was delivered to him by Richardson.

The only evidence to sustain the allegations of said answer of the garnishee was the testimony of the appellant, Richardson. The garnishee gave no testimony and offered no documentary evidence. Hays and Hays were not made parties and were not called as witnesses and gave no evidence by deposition.

We quote the evidence of Richardson, applicable to the question now being considered, as given in the condensed recital thereof in appellant's brief:

"*DIRECT EXAMINATION:* (Tr. p. 73, l. 15 to p. 85, l. 27) I live in Nashville, Tennessee. . . . There came a time when I incorporated the business. You (Roy Sheneman) did that for me. I got the charter April 29, 1954. Then I operated as the Koontz Lake Hotel Company, Inc., from that time on. There came a time when I agreed to sell my stock to Dannie and John Hays, father and son, and they are in charge there now. I sold out to them July 12 to 15th—within one of those three days. It was July 16, 1954. I did not get all the money for the stock at the time. I got all but $1500.00. I never got the rest of it. Whatever balance is there is the money Mr. Sheneman has. It was a three-cornered affair, Danny Hays and his wife and son. I put them in possession and went back to Tennessee. A difficulty arose later on about some dishes and chairs and things. There came a time when Roy Sheneman sent me a bill for services. I signed a slip for it so that he could collect his money. I addressed that to Hays to pay it. Later on there came a time when Hays and Hays actually came in and left the money

with Mr. Sheneman, at least I got a report from Mr. Sheneman that he had the money, and also a report that they held out on me about some dishes, some chairs, or one thing and another they thought should be there and they wasn't. They deducted that off. I haven't said anything yet. I was to deliver the stock to Mr. Sheneman. That was for $167.50. I never brought the stock. Mr. Sheneman had the money when the suit was filed. That is how he happened to be in this case. . . . ."

"CROSS EXAMINATION: (Tr. p. 85, l. 29 to p. 95, l. 11)

" . . . . This $1115.15 Mr. Sheneman holds would be mine if I signed over the stock and gave it to him. The only thing that is keeping me from signing over the stock is the dispute about $159.60 that Hays retained.

Q: He Hays have no interest at all in this $1555.15?

A: He never signed it over to me.

Q: If it is assigned to you, you will sign it over to them?

A: It hasn't been assigned to them.

The whole dispute is over $159.60. That is the only dispute the Hays and I have between us. The total selling price of the tavern was $4500.00, maybe $5000.00. This is just the balance due on it."

Under the rule that this court cannot weigh the evidence and that the weight thereof is for the trial court, we can reverse the determination of that court, in connection with the garnishee's said contention, only if one inference favorable to said garnishee is deducible from the aforesaid evidence and that inference is contrary to that drawn therefrom by the trial court. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669. The said contention of the garnishee, if it is to be sustained, requires us to say, as a matter of law, that said evidence shows undisputedly, that the money in his hands, $1,115.15, was held by him as an escrow, with no title

to or property therein in Richardson until the latter delivered to the escrow, the garnishee, the corporate stock sold to the Hays.

Said evidence establishes that the hotel property was sold for $4,500.00 or $5,000.00, all of which was paid by the Hays except $1,500.00; that, thereafter, Richardson "signed a slip," addressed to Hays, to pay Sheneman an indebtedness of Richardson to him for services; that thereafter the Hays "actually came in" and left the money, apparently the $1,500.00 less the $159.60 for dishes, chairs, etc., with Sheneman; that Richardson was to deliver the stock to Sheneman; that Richardson never brought the stock; that the $1,115.15 held by Sheneman would be Richardson's if he signed over the stock and gave it to Sheneman; that *the only thing that is keeping Richardson from signing over the stock is the $159.60,* retained by the Hays; that *the whole dispute is over the $159.60* and *that is the only dispute* between Hays and Richardson; that Hays "never signed it (the money) over to me" (Richardson) ; and Sheneman had the $1,115.15 at the time the suit was filed.

It is clear then, that the "only thing" keeping Richardson from signing over the stock was the dispute over the $159.60 which was still in the hands of the Hays. The money held by the garnishee, according to the reasonable inference from the testimony, belonged to Richardson. There appears no evidence that all the money, $1,115.15, in Sheneman's hands was to be held by him until Richardson delivered to him the stock for the Hays, as contended by the garnishee. If the Hays had any such arrangement, understanding, or contract with the garnishee, it does not appear in the evidence. Insofar as the evidence discloses, Hays left the money with the garnishee, without retaining any control thereof and without any directions or instruc-

tions that it was to be held until the stock was delivered. Even under the evidence most favorable to the garnishee, there appears no agreement or understanding, actual or implied, between Richardson and the garnishee that the money was to be held until the stock was delivered. Certainly, if the money was to be held by Sheneman until the stock was delivered by Richardson, such instruction, direction, or arrangement would logically come from the Hays, not Richardson. The evidence reveals a situation in which the Hays would be the interested parties that their money be not paid out by the garnishee until the stock was received, but there appears nothing in the record to indicate that they retained or manifested any further interest in the money.

The statute (Sec. 3-532, Burns' 1946 Replacement), which the garnishee alleges was contravened by the order of the court, provides that:

"The garnishee shall not be compelled in any case to pay or perform *any contract in any other manner*, or at any other time, *than he would be bound to do for the defendant.*" (Our emphasis)

Richardson said that the money held by the garnishee "would be mine" if he signed over the stock and gave it to him (the garnishee). Then he said that the only thing which kept him from signing over the stock was the dispute with the Hays over the $159.60 retained by Hays out of the unpaid balance of the purchase price. This statement of Richardson that the money "would be mine" if the stock was signed over by him does not admit of only the one inference that the money in the garnishee's hands belonged to the Hays until the stock was delivered. The statement is susceptible of other inferences, including the inference that reference was thereby made to the right of the physical possession of the money rather than to the

title thereto. Now, the order of the court did not interfere with any proven contract or arrangement between Richardson and the garnishee. The answer of the garnishee did not allege any contract that was violated by the court order. The answer of the garnishee was that "this Garnishee Defendant cannot determine whose money it is, due to the facts stated." The court made that determination, and there was evidence and inferences therefrom to support it. It does not appear that by the order the garnishee was "compelled . . . to pay or perform any contract in any other manner . . .," than he was bound to do by the defendant (Richardson). The failure of Richardson to assign the stock was acknowledged by him to have reference to the $159.60 retained by the Hays, not the $1,115.15 in the hands of the escrow garnishee.

The garnishee-appellant argues that there was a dispute between Richardson and the Hays and that he, the garnishee, has not received the stock, and that he is ordered (by the court) to pay the sum of $800.00 and costs from the money in his hands to pay the judgment against Richardson, "when he would not be bound to pay it to Richardson." But the evidence and permissible inferences, as we see it, does not support that position. The real and substantial question provoked by the garnishee's answer was: to whom did the money in the hands of the garnishee belong? The court determined that question. By its finding and order, the court, after hearing all evidence submitted on the question, concluded that the money belonged to Richardson and, therefore, in effect, it concluded that the garnishee would be bound to pay the money to Richardson. We think that there was evidence to support such finding and conclusion.

The judgment is affirmed.

Pfaff, J., and Bowen, J., dissent with opinion.

## DISSENTING OPINION

PFAFF, J.—I cannot agree with the majority opinion in this case. In the answer filed by the garnishee defendant, Sheneman, and from the evidence in the entire record it appears, in my opinion, that the only reasonable inference that can be drawn from the evidence is that the $1,500.00 held by the garnishee defendant was not to be delivered to Richardson until Richardson and his wife transferred this stock in the Koontz Lake Hotel, Inc. Richardson's wife was not a party to this action and from the evidence and the record under the law, Richardson could not have been compelled to deliver such stock until the full purchase price for the same was paid. The evidence is undisputed that $159.60 had not been paid and, therefore, the full purchase price of the stock was not available to Richardson. Richardson and his wife, holding the ownership of this stock, determined by their agreement with Hays the price they would require before delivering this stock. The law could not compel them to sell it for less under these circumstances. Therefore, under the evidence, the garnishee defendant could not have compelled them to deliver such stock until the full agreed purchase price had been paid, and if they refused to deliver such stock they would not be entitled to any of the money, and the conclusion reached in the majority opinion requires the garnishee to perform a contract in any manner other than he was bound to do for the defendant contrary to §3-532, Burns' 1946 Replacement.

In my opinion, the law and the reasonable inferences to be drawn from the evidence sustain the appellants' contention that, therefore, this cause should be reversed.

Bowen, J., concurs.

## On Petition for Rehearing

KELLEY, C. J.—In their petition for rehearing, appellants make much of their original contention that it was necessary for the trial court to adjudicate the attachment issues. It is apparent that in their zeal to successfully prosecute their appeal the appellants have blinded themselves to the substance of the question, as determined in our opinion. They take no exception to the legal pronouncements made in Waples on Attachment and Garnishment and the case of *Earl et al.* v. *Matheney* (1877), 60 Ind. 202, 204, as quoted from in the main opinion, nor do they contest the fact, stated in the original opinion, that in the beginning the only available ground of the attachment was the nonresidence of the principal defendant, which ground was waived by the general appearance to the action of the principal defendant and his participation in the trial. They voice no opposition to the rule referred to in the opposed opinion, that when the trial court obtained jurisdiction over the principal defendant by virtue of his general appearance to the cause, the attachment was no longer the foundation of jurisdiction, confined to the *res* attached, but such attachment became merely an ancillary remedy allowed the appellees for the securance of their demands. Thus it would seem that appellants concur in the legal consequence of the aforementioned unopposed factors, namely, that the garnishee appellant is bound by the judgment and cannot avoid the same on account of mere irregularities in the proceedings in the principal action and has no further right to inquire into such proceedings between the appellees and the principal defendant.

Appellants also say that our holding in the main opinion contravened cited ruling precedents of the Supreme Court. The cases referred to are the same ones relied upon by appellants in their initial brief.

We expressed ourselves with relation to said authorities in the original opinion. There seems no cause to now restate such expressions and no further comment appears necessary, other than to say that we have again reviewed said cases and find no factual situation in any thereof comparable to the facts existent in the instant case.

Continuing, the appellants assert that we misstated the substance of the answer of the garnishee, appellant Sheneman, in that we said that said answer alleged that the stock was that of appellant Richardson, whereas in truth the answer alleged that the stock was that of said appellant and his wife, the latter not being a party to this action. While we made no such direct statement as appellants indicate, we think that by indirection we made a statement from which it could be implied that reference was made to the stock as being that of Richardson. However, we fail to perceive the pertinency of appellants' assertion, and they have not offered any statement showing that said alleged misstatement had any bearing or influence upon the determination of the cause. No point, question, or contention was made in the briefs or arguments of either appellants or appellees concerning the title to the stock as between Richardson and his wife. At no place in the briefs or arguments was any point or question ever raised as to the fact that Richardson's wife was not made a party to the action. In fact, appellants, themselves, in their briefs, made references to the stock as Richardson's, without any reference to his wife. For instance, appellants said in their initial brief:

"On July 16, 1954, Richardson agreed to sell *his* stock to Dannie and John Hays."
and again:

"Mr. Sheneman is holding this money in escrow,

and is to turn it over to appellant Richardson *when Richardson delivered the corporate stock* to him."

and again:

"The selling price was $4500.00 or $5000.00, *and Richardson received all but $1500.00 of it.*"

and in the reply brief:

"The undisputed evidence . . . is that Dannie Hays and John Hays placed money in the hands of appellant Sheneman in escrow to be turned over by him *to appellant Richardson* in the event, but only in the event, *that Richardson delivered certain stock to him.*"

Richardson, in his testimony, said in part:

"Then came a time when I agreed to sell *my stock* to Dannie and John Hays . . . ." (Our emphasis)

Finding no relation between appellants' allegation charging us with "misstating" the answer and the merits of the appeal determination, we can but conjecture as to the purpose thereof.

Appellants, in substance, further complain of our holding that there was evidence to support the decision of the trial court. We find no reason to change our original opinion on this question. Appellants' contention can be sustained only if the evidence affords but one conclusion and that conclusion is contrary to that reached by the trial court. As stated in the main opinion, we think there was evidence, and permissible inferences therefrom, to support the decision of the court. The evidence, in our opinion, does not force a conclusion contrary to that of the trial court. To hold otherwise would be, in this case, tantamount to weighing the evidence.

It is asserted in the rehearing petition that we erred in holding "that Hayes and Hayes had no interest in the money." Our holding was not exactly as appellants express it. Hays and Hays were not made parties to

the action. We said that if the Hays had any understanding, arrangement, or contract with the garnishee, appellant Sheneman, that all the money in the latter's hands was to be held by him until the stock was delivered to him, "it does not appear in the evidence." We further said that "Insofar as the evidence discloses" Hays left the money with the garnishee "without retaining any control thereof and without any directions or instructions that it was to be held until the stock was delivered." In other words, there is no evidence that the Hays reserved any control over the money they gave the garnishee. Under such circumstances, would this court be warranted in holding that the trial court should have presumed or surmised or conjectured that the Hays retained an interest in or control over the money? Richardson was asked this question: "He Hays have no interest at all in this $1,555.15?" His answer was: "He never signed it over to me." Assuming that the answer was responsive to the question, it certainly does not establish any contract or arrangement between the Hays and the garnishee that the latter was to hold the money until the stock was delivered. Nor does it show any control over the money reserved in the Hays or any directions or instructions by them as to its disposition. Immediately after the aforesaid answer, Richardson said: "The whole dispute is over $159.60. *That is the only dispute the Hays and I have between us.*" (Our italics.) Sheneman, the garnishee, did not testify and his answer was unverified and was not put in evidence.

"Generally, it is the duty of the garnishee to make known the claims of third persons of which he has knowledge." 28 C. J., Garnishment, Sec. 412, page 284; 38 C. J. S., Garnishment, Sec. 204, page 444. If the garnishee, appellant Sheneman, did not see fit to make full disclosure of all the facts

known to him, as the same were alleged by him in his answer, he stands in no position to complain that his evidence fell short of establishing an asserted contractual arrangement which he was entitled to have protected under the provisions of Sec. 3-532, Burns' 1946 Replacement.

It was the prerogative of the trial court to weigh the evidence and certainly the meager evidence given on the question of who the money belonged to was not such as to compel us to say that it admitted of only one conclusion contrary to that reached by the trial court.

The petition for rehearing is denied.

Bowen, J. and Pfaff, J., dissent.

NOTE.—Reported in 147 N. E. 2d 562.
Rehearing denied in 148 N. E. 2d 423.