In the Matter of the Arbitration between **SEA DRAGON, INC., Disponent Owners of the Dimos Halcoussis, Petitioner,**

and

**GEBR. VAN WEELDE SCHEEPVAART-KANTOOR B.V., Respondent.**

No. 83 Civ. 1485 (KTD).

United States District Court, S.D. New York.

Oct. 6, 1983.

Cardillo & Corbett, New York City, for petitioner; Tulio R. Prieto, New York City, of counsel.

Delson & Gordon, New York City, for respondent; Daniel J. O'Callaghan, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Petitioner, Sea Dragon, Inc. ("Sea Dragon"), owner of the vessel M.V. DIMOS

HALCOUSSIS, seeks to confirm an arbitration award against respondent, Gebr. Van Weelde Scheepvaartkantoor B.V. ("Van Weelde"), charterer of the same vessel. Petitioner is a Panamanian corporation and respondent is a Dutch corporation. For the reasons set forth below, the arbitration award is vacated.

## I.

### FACTS

In June, 1981, the parties entered into a contract for the shipment of four cargoes of sugar. The vessel performed the chartered voyage and discharged on February 24, 1982. A demand by the owner of the vessel for arbitration arose from a dispute over the non-payment of $105,435.83 in freight due. The respondent admitted the debt, but argued that the arbitration panel was precluded from rendering an award in favor of the petitioners. To do so, respondent argued, would violate a Netherlands' court sequestration order obtained by Uni-Ocean Lines Pte. Ltd. ("Uni-Ocean"), a creditor of the owner. Nonetheless, on February 4, 1983, a majority of two arbitrators, with one dissenting vote, directed an award of $105,435.83 plus interest in favor of petitioner.

The Netherland order obtained by Uni-Ocean enjoined the charterer, Van Weelde, from paying its debt to the owner, Sea Dragon. Uni-Ocean is a creditor of Sea Dragon and a debtor of Van Weelde. Uni-Ocean and Sea Dragon are currently in arbitration before a panel of the Society of Maritime Arbitrators. Presumably, Uni-Ocean is attempting to obtain a judgment for monies allegedly owed to it by Sea Dragon. Thus, the Dutch sequestration order is meant to provide a fund for the ultimate satisfaction of a judgment against Sea Dragon in the Uni-Ocean/Sea Dragon dispute. The Dutch order, issued on February 11, 1982, directs Van Weelde "to keep the sequestered matters [$105,435.83 owing from Van Weelde to Sea Dragon] in its possession under penalty of invalidity of the payments and/or deliveries made in contravention of this sequestration order."

Respondent's Affidavit in Opposition, Exh. 1. Under Dutch law, apparently, a creditor by court order may attach any assets owned by his debtor, including monies owing to the debtor from a third party. *See* Affidavit of Peter Houtman, Respondent's Affidavit in Opposition. Thus, in the instant case, Uni-Ocean, as creditor of Sea Dragon, has attached the debt admittedly owing from Van Weelde to Sea Dragon.

## II.

### DISCUSSION

Court review of arbitration awards is narrowly limited by 9 U.S.C. §§ 10 & 11. Confirmation is mandatory unless the award falls into one of the narrow statutory exceptions prescribed in sections 10 and 11 of the Arbitration Act or into one of the judicially-created exceptions.

Respondent argues that the arbitration award in issue should be vacated under subsection (a) of 9 U.S.C. § 10. Subsection (a) provides:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (d) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Respondent's argument in opposition to Sea Dragon's motion to confirm is twofold. First, it contends that the arbitration board exceeded its authority by ruling in Sea Dragon's favor. Specifically, Van Weelde argues that ordering it to pay the debt owed to petitioner, contrary to the Dutch sequestration order was in manifest disregard of law and contrary to public policy. Second, respondent argues that the award should be vacated because it is incomplete, contradictory, and not final. The second argument is based on a number of claimed ambiguities in the arbitrators' opinion.

In reaching their decisions, the arbitrators considered respondent's argument that the Dutch sequestration order was a valid defense. In opposition, Sea Dragon contended that Van Weelde had acted fraudulently and in collusion with Uni-Ocean to obtain the sequestration order. Petitioner argued further that the Dutch order should not be respected here.

The arbitrators unanimously found, *inter alia,* that (1) respondent's failure to pay a portion of the freight admittedly due constituted a breach of the Charter; (2) the Dutch order of sequestration was obtained with respondent's assistance and cooperation; and (3) respondent, as a creditor of Uni-Ocean, stood to gain from the additional security of the sequestered funds. Significantly, the arbitrators did not find that the sequestration order was fraudulently obtained. In addition, the majority found that the breach of the Charter continued after the sequestration order was obtained up to the date of the award, February 4, 1983. The dissent parted with the majority on this issue and found that the Dutch sequestration order was a valid defense to present payment.

■ Before addressing respondent's arguments, I turn to petitioner's counter-arguments. Petitioner argues that the arbitrators acted properly and with regard to the applicable law. It maintains that respondent has created its own dilemma by cooperating with Uni-Ocean in obtaining the sequestration order. It urges application of the rule of law that a party may not plead the defense of impossibility when it intentionally incapacitates itself from performing. *See Kamma Rippa Music, Inc. v. Schekeryk,* 510 F.2d 837 (2d Cir.1975). This asserted rule of law, however, is inapplicable to the case at bar. In *Kamma Rippa,* the plaintiff had attached its own indebtedness to the defendant, ostensibly to facilitate acquiring jurisdiction. After the court directed partial summary judgment for the defendant, the plaintiff, on appeal, argued that payment of its contractual obligation was "impossible" because it would involve violation of the court's attachment order. *Kamma Rippa,* 510 F.2d at 842. Naturally, the impossibility defense was deemed frivolous because the attachment was procured upon the plaintiff's own motion and it related directly to the proceeding which ultimately went in the defendant's favor. The case at bar is distinguishable, however, because the sequestration order was obtained by a third party and related to an entirely different dispute from that between petitioner and respondent.

■ Petitioner further argues that when a contract is performable in the United States, American courts "will not give effect to a foreign law or decree forbidding such performance or requiring that payments shall be made to the foreign government itself," citing 6 A. Corbin, *Contracts,* § 1351 (1962). It argues that because payment of freight under the Charter Party was to be made in New York, the Dutch sequestration order forbidding present payment should not be respected in American courts.

The proposition petitioner cites, however, does not support the conclusion it desires. The rationale behind the above-stated rule is that the legality of the performance of a contract should depend upon the law of the place of performance in order to effectuate the intent and expectations of the parties. *See Central Hanover Bank & T. Co. v. Siemens & Halske Co.,* 15 F.Supp. 927, 929 (S.D.N.Y.1936), *aff'd,* 84 F.2d 993 (2d Cir.), *cert. denied,* 299 U.S. 585, 57 S.Ct. 110, 81 L.Ed. 431 (1936). Thus, in *Central Hanover Bank,* a new German law directing payments to the German government of debts owed by Germans to foreigners did not constitute a defense in an American suit on debts payable in New York. The instant case does not present an analogous controversy. The Dutch sequestration order does not attempt to invalidate the debt owing from respondent to Sea Dragon or to frustrate performance of the parties' contract. Indeed, the Dutch order implicitly recognizes the validity of the contract and the existence of the debt by freezing the assets owing from respondent to petitioner

pending the outcome of the Uni-Ocean proceeding. Absent allegations that the Dutch court lacked jurisdiction over either petitioner or the *res*, the sequestration order should be respected regardless of the place of performance. *See Kenner Products v. Societe Fonciere et Financiere*, 532 F.Supp. 478, 479 (S.D.N.Y.1982). The absence of such allegations are also important for the reasons set forth below in discussing respondent's arguments against confirmation.

## A. *Incomplete, Inconsistent, Not Final Award*

■ The Arbitration Act provides, as noted above, that only a "mutual, final and definite" award is subject to confirmation. Respondent argues that the ambiguities of the award prevent its confirmation. It cites the majority opinion's statement that "the majority of the panel concludes the threshold issue of the sequestration and accompanying issues of alleged fraud and collusion should be more appropriately decided by the court having jurisdiction in this arbitration." Notice of Motion to Confirm Arbitration Award, Exh. C. Courts will not enforce an award that is incomplete, ambiguous or contradictory. *Bell Aerospace Co. Div. of Textron v. Local 516, Int. U.*, 500 F.2d 921, 923 (2nd Cir. 1974), citing *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). Respondent contends that the panel did not decide the issue of sequestration, and that therefore the award is not subject to confirmation because it is incomplete, contradictory,[1] and non-final.

■ Although I agree that the statement quoted above, taken alone, may suggest that the arbitrators did not consider the issue of sequestration, the opinion as a whole makes it clear that they did. Indeed, it is precisely on the pivotal issue of the sequestration order that the dissent and the majority disagreed. The majority found continuing breach of the charter agreement, notwithstanding the Dutch sequestration order; the dissent, on the other hand, found that the breach was excused from the date of the sequestration order. Moreover, even if I concluded that the arbitration panel's decision was ambiguous or non-final, this would be grounds for remand to the arbitration panel for clarification and not vacatur of the award. *See, e.g., International Association of Machinists and Aerospace Workers v. Aerojet-General Corp.*, 263 F.Supp. 343 (C.D.Cal. 1966) (remand to arbitrator is appropriate where there is reasonable ground for disagreement as to what was actually decided.). Because the parties already have briefed the issue of whether the Dutch order constitutes a valid defense, and the arbitrators have either rejected that defense, or declined to pass judgment on it, remand would be fruitless in this case. Thus, I now turn to consideration of respondent's argument that an order directing it to pay the sum owed to petitioner is invalid as contrary to public policy and in manifest disregard of the law.

## B. *Manifest disregard for the law and in violation of public policy.*

■ Ordinarily, an award may not be set aside because of the arbitrators' error in interpreting the laws. *Office of Supply Government of the Republic of Korea v. New York Navigation Co.*, 469 F.2d 377, 379 (2d Cir.1972). Arbitration awards are regarded with extreme deference and arbitrators need not state the rationale behind their decision. *Id.* Extensive judicial review of arbitration awards would frustrate the basic purposes of arbitration, which is to dispose of disputes quickly and avoid the expense and delay of extended court proceedings. *Saxis Steamship Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577, 582 (2d Cir.1967). An arbitration award may be vacated, however, on certain

---

1. The award appears contradictory because the panel seems to have left disposition of the sequestration issue to the courts, yet at the same time the opinion states "Findings and Award of this Panel fully dispose the Charter Party issues in dispute."

narrow statutory grounds. *See* 9 U.S.C. § 10.

■■■ In addition to the statutory grounds for vacating an award, enumerated in section 10, the Supreme Court in *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953), carved out another ground for judicial review, holding that a court may vacate an award which is the product of the arbitrators' "manifest disregard" of applicable law. *See Office of Supply*, 469 F.2d at 380. Similarly, an award may be set aside if it compels the violation of law or is contrary to well accepted and deep-rooted public policy. *Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir.1980). *See also Local 453, International Union of Electrical, Radio and Machine Workers v. Otis Elevator Co.*, 314 F.2d 25, 29 (2d Cir.1963), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963) (when public policy is sought to be interposed as a bar to enforcement of an arbitration award, a court must evaluate its asserted content).

■■■ These judicially created avenues of review, however, must be narrowly construed. *Saxis Steamship Co.*, 375 F.2d at 582. The public policy exception to the enforcement of arbitration awards is "not available for every party who manages to find some generally accepted principle which is transgressed by the award. Rather, the award must be so misconceived that it compels the violation of law or conduct contrary to accepted public policy." *Revere Copper & Brass v. Overseas Private Inv. Corp.*, 628 F.2d 81, 83 (D.C.Cir.1980), *cert. denied*, 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980).

■■■ I find that the case at bar violates public policy and warrants deviation from the general rule of confirmation of arbitration awards. By directing present payment to petitioner, the arbitration panel, in effect, directed respondent to violate the Dutch decree. As the dissenting arbitrator noted, the award "expose[d] the Charterers to the dilemma of conflicting orders— whether to pay as the Panel orders or to retain the funds as the Rotterdam court has decreed." It would be unfair to expose respondent to the results of such a choice.

More importantly, the doctrine of comity, founded on diplomatic respect for valid foreign judgments militates against disregard of the Dutch order. "Comity is to be accorded a decision of a foreign court so long as that court is a court of competent jurisdiction and as long as the laws and public policy of the forum state and the rights of its residents are not violated." *Kenner Products*, 532 F.Supp. at 479. Petitioner claimed that the Dutch decree was obtained fraudulently, yet provided little evidence of such conduct before the arbitrators. Fraud, furthermore, was not a basis for the majority's decision. Moreover, such claims appropriately should have been raised in the Netherland's court. Sea Dragon has not and did not challenge the Dutch court's jurisdiction nor demonstrated that the Dutch decree violates American law or policy.[2] Absent any evidence to the contrary, it is the firm and established policy of American courts to respect a valid foreign decree. *See generally, Hilton v. Guyob*, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895) (comity defined as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard ... to international duty and convenience ...").

---

**2.** The procedural background of the Dutch order is explained in the affidavit of Peter Houtman, a Rotterdam attorney representing Uni-Ocean. Under Dutch law, a creditor by court order may attach any assets owned by his debtor, including monies owing to the debtor from a third party. If the debtor is a non-resident, the writ is served upon him *via* diplomatic channels. Here, Sea Dragon was notified of the sequestration, in this manner, on February 17, 1982, one week after the sequestration order was obtained. Under Dutch law, Sea Dragon would then have had an opportunity to challenge the sequestration order, but it did not do so. *See* Respondent's Affidavit in Opposition. Thus, respondent's unopposed position is that the Dutch order was obtained in compliance with both Dutch law and American due process standards.

The arbitration panel, while fully aware of the sequestration order, nevertheless directed respondent to violate it. Thus, the arbitration award will not be confirmed since it compels the violation of law and is contrary to accepted public policy. *See Revere Copper*, 628 F.2d at 83; *Union Employers Division of Printing Industry, Inc. v. Columbia Typographical Union*, 353 F.Supp. 1348, 1349 (D.D.C.1973), *aff'd*, 492 F.2d 669 (1974).

For the reasons stated above, Sea Dragon's petition to confirm its arbitration award is denied, and the arbitration award is vacated.

SO ORDERED.