**IN–TECH MARKETING INCORPORATED et al., Plaintiffs,**

v.

**HASBRO, INC., et al., Defendants.**

Civ. A. No. 87–2753.

United States District Court,
D. New Jersey.

Aug. 14, 1989.

Michael R. Needle, Needle & Feldman, Philadelphia, Pa., and Judson L. Levin, Newark, N.J., for plaintiffs.

Kim J. Landsman, Morrison & Foerster, New York City, and Edward F. Lamb, Robinson, Wayne & La Sala, Newark, N.J., for defendants Hasbro, Inc. and Milton Bradley Co.

Robert Carlson, Spengler, Carlson, Gabar, Brodsky & Frischling, New York City, and Todd M. Sahner, Hannoch Weisman, Roseland, N.J., for defendants Alvin Bojar and Alvin Bojar & Associates.

## OPINION

WOLIN, District Judge.

Plaintiffs In–Tech Marketing Incorporated ("In–Tech"), Global Guaranty Distribution, S.A. ("Global"), Raphael J. Van Der Cleyen and Wilfried F. Ribbens initiated this patent suit seeking the right to the exclusive use of U.S. Patent No. 3,716,229 for a toy originally known as the "Springbal," marketed in Europe as the "Lolobal," and sold by Hasbro, Inc. in the United States as "Pogobal." Plaintiffs also assert other patent-related claims and a claim for tortious interference with contract. Defendants Hasbro, Inc. and Milton Bradley Company (collectively "Hasbro"), joined by defendants Alvin Bojar and Alvin Bojar & Co., have filed this motion for summary judgment in opposition to plaintiffs' claim, and in favor of defendant Hasbro's counterclaim for patent infringement. The Court will grant defendants' motion for summary judgment as to plaintiffs' claims, but will deny the motion as to Hasbro's counterclaim.

## I. BACKGROUND

Two plaintiffs, Van Der Cleyen and Ribbens, invented the recreational toy at issue, for which they obtained a Belgium patent in May, 1969. On October 27, 1969, the inventors entered into a licensing agreement with Les Usines Fabelty, S.A. ("Fabelty") that gave Fabelty the right to exploit the patent. On February 21, 1970, the previous contract was amended so as to sell outright to Fabelty ownership of all patents obtained in countries outside of the common market, Austria, and Switzerland, in exchange for royalties of one franc per piece sold, up to a limit of one million pieces. In March 1970, Fabelty applied for a U.S. patent in the name of the inventors. The inventors then executed an assignment of the application, together with all rights in the invention, to Fabelty.

Fabelty subsequently became insolvent and went into liquidation on November 30, 1972 without ever exploiting the U.S. patent, which was not issued to Fabelty until February 13, 1973. Nominal defendant Simone Tyriard was appointed as liquidator.

In 1977, Fabelty was formally liquidated under Belgium law, without any reference made to the U.S. patent. Defendant Hasbro now contends that after that liquidation ownership rights in the patent reverted to the Fabelty shareholders. Plaintiffs, on the other hand, argue that under Belgian law ownership rights reverted back to the inventors.

In 1985, after all relevant European patents had expired, the toy became immensely popular throughout Europe. One of the companies selling the toy in Europe was Mandelsonderneming Elson, B.V. ("Elson"), a Netherlands corporation whose principal is defendant van den Elshout. In May 1985, Elson executed a distribution agreement with Global providing that Global would distribute Lolobals on an exclusive basis throughout the United States and Canada. In the summer of 1985, Global apparently discovered that the Lolobal toy was covered by an unexpired American patent that had been issued to Fabelty.

Global then claims to have confronted Elson about who owned the toy's U.S. patent rights. On May 6, 1985, in order to clear up matters, Elson, Global, and the inventors entered into what was called a patent assignment agreement. This agreement provided that: (1) the inventors (Van Der Cleyen and Ribbens) would assign all their rights, including any patent rights in the United States, to Global in exchange for two Dutch Guilders; (2) the inventors would request Mr. Olivier, Fabelty's former principal and the individual with whom the inventors had dealt, to release the patent rights granted Fabelty to Elson, N.V., a Curacao-based company to be established by Elshout; (3) Global and Elson would cross-assign/license the rights so obtained. In essence, Elson was to arrange for the transfer of the toy's patent rights to Global.

Global never received the toy's U.S. patent rights. In November, 1985, a dispute arose between Global and Elson with respect to royalty payments due under a May 21, 1985 Distribution Agreement for Lolobals supplied by Elson to Global for export to Canada. A lawsuit in the Netherlands

ensued, in which Elson sought a declaration that the Elson–Global contractual relationship was dissolved. On October 7, 1988, the Dutch Court declared: "The contractual relationship between plaintiff and defendant, referred to in this opinion, [is] dissolved," as of November 20, 1985. In that opinion, the Dutch Court made repeated reference to the May 6, 1985 patent assignment agreement involving Elson and Global.

In the meantime, the quest continued to secure the toy's U.S. patent rights. On November 30, 1985, Simone Tyriard, believing that she retained power to act for Fabelty as its liquidator, purported to transfer the patent rights to Elson, B.V., which subsequently purported to grant an exclusive license for the patent rights to Teejay America, a company controlled by defendant Alvin Bojar. In May, 1986, Hasbro then apparently began dealing with Bojar to acquire rights to produce the Lolobal, and began marketing the toy in November, 1986, under the name "Pogobal." In November, 1986, plaintiffs commenced the present lawsuit.

Finally, in February, 1987, Hasbro claims to have conclusively obtained the toy's patent rights when all of Fabelty's former shareholders or their heirs agreed to give Simone Tyriard power of attorney to assign the patent rights to Hasbro. Besides contending that the patent rights had reverted to the inventors, plaintiffs also dispute whether all of Fabelty's shareholders gave Tyriard a power of attorney.

## II. DISCUSSION

A. *Ownership of the Toy's U.S. Patent Rights*

The parties involved in this case have tried to secure the Lolobal's U.S. patent rights in a variety of ways. The toy's inventors have been approached, the Fabelty Company's bearer shares have been bought up years after the company was liquidated, and the company's liquidator has been asked to play a part in various attempts to gain control of the patent. The Court finds, however, that it was not until Fabelty's liquidator, Simone Tyriard, re-

ceived powers of attorney from all of Fabelty's former shareholders or their heirs to assign the toy's U.S. patent rights to Hasbro did the matter of ownership become settled. The Court makes this finding based upon an examination of relatively straightforward precepts of Belgium corporate law, and consideration of certain affidavits and other evidence submitted by the parties.

■ There is no dispute that the U.S. patent on the Lolobal was issued to Fabelty on February 13, 1973, even though the company had gone into liquidation on November 30, 1972. Fabelty had acquired the patent rights through a valid assignment by the toy's inventors. Plaintiffs now contend that the assignment was automatically rescinded once Fabelty went into liquidation because Fabelty no longer sold any Lolobals and thus did not pay the inventors any royalties, in contrast to the inventor's reasonable expectations.

Plaintiffs' automatic rescission argument is apparently based on Article 1183 of the Belgian Civil Code, which provides:

> Art. 1183—A resolutory condition is one which, when it is fulfilled, works the revocation of the obligation and returns matters to the same state as though the obligation had never existed.
>
> It does not suspend execution of the obligation; it only obligates the obligee to restore what he has received, in the case where the event contemplated by the condition occurs.

Article 1183, however, is not applicable to the inventors' agreement with Fabelty because there was no clause conditioning the validity of the agreement on Fabelty not going into liquidation. The inventor's situation with Fabelty was more likely governed by Article 1184 of the Belgian Civil Code, which provides:

> Art. 1184—A resolutory condition is always understood in synallagmatic contracts in the case where one of the two parties does not satisfy his engagement.
>
> In such case, the contract is not rescinded as a matter of law. The party toward whom the engagement has not

been executed has the choice either to force the other to execute the engagement when it is possible or to claim rescission of it with damages.

Rescission must be sought at law, and the defendant may be granted a delay according to the circumstances.

Article 1184 would have provided the inventors with a means of rescinding their patent assignment agreement with Fabelty, an outcome that may have been reasonable considering Fabelty's liquidation and inability to market the Lolobal in the United States or elsewhere. The inventors, however, did not pursue any action for rescission, either during Fabelty's five year liquidation period from 1972 to 1977, or in the five year period after liquidation during which the inventors could have at least attempted to bring an action against the Fabelty shareholders pursuant to Article 194 of the Belgian Company Act which provides for a five year statute of limitations in "[a]ny action against partners, members or shareholders [of the company] from the time of publication of the act of dissolution of the company....".

■ This failure of the inventors to bring an action for rescission against either Fabelty or the shareholders within the appropriate limitations period forecloses any claim that the inventors ever took back ownership over the Lolobal's U.S. patent rights. Instead, the patent continued to be owned by Fabelty, and upon Fabelty's liquidation, ownership reverted to the shareholders as an undivided whole because the patent was not otherwise disposed of. Fierens decl. at ¶¶ 9–10.[1]

■ Ownership of the patent remained in the hands of the Fabelty shareholders until February, 1987, when Fabelty's liquidator, Simone Tyriard, obtained powers of attorney from the 30 record shareholders of Fabelty as of December 20, 1977, by which the shareholders or their heirs gave authority to Tyriard to assign the patent rights to Hasbro. Tyriard Decl. at ¶ 8. Tyriard then effected the assignment.

Plaintiffs attempt to demonstrate that Tyriard did not receive powers of attorney from all the relevant shareholders. This attempt, however, is not grounded on probative evidence and thus plaintiffs have not placed in dispute the fact that the Fabelty shareholders did consent to the assignment to Hasbro. Plaintiffs' reliance on a 1966 Belgian Official Gazette to show there are two unaccounted for shareholders does not bear on the situation as of December 1977, and thus does not contradict the Tyriard Declaration. Plaintiffs' contention that Global's accountant, Mr. Wesselingh, owns 100 bearer certificates in Fabelty also is not sufficient to create a material issue of fact. There is no sworn testimony by Wesselingh to this effect, and the only evidence of Wesselingh's ownership, a May 16, 1988 patent assignment, is itself contradicted by a June 19, 1987 document in which Interchain B.V., a Global sister company, purports to assign patent rights derived from the same bearer shares that Wesserlingh supposedly owned a year later. Supplemental Landsman Decl. Exh. 3. Plaintiff's use of the Wesselingh document and the 1966 Belgian Gazette supports only speculative assertions that Tyriard did not receive powers of attorney from all relevant Fabelty shareholders and therefore cannot prevent summary judgment on this issue. *See Jersey Central Power & Light Co. v. Township of Lacey,* 772 F.2d 1103 (3d Cir.1985), *cert. denied,* 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986).

As the Court finds that Hasbro is the owner of the Lolobal's U.S. patent rights and that none of the plaintiffs have ever owned the patent rights since the inventors first assigned the rights to Fabelty, plaintiffs' patent infringement and other patent-related claims must all fail. Therefore, the Court will grant summary judgment in fa-

---

1. This result is in keeping with general principles of American corporations law. For example, in New Jersey, N.J.S.A. 14A:12–16 provides:
   Distribution to shareholders
   Any assets remaining after payment of or provision for claims against the corporation shall be distributed among the shareholders according to their respective rights and interests. Distribution may be made either or both cash and kind.

vor of defendants on the first, second, fourth, fifth and sixth counts of plaintiffs' complaint.

### B. *Plaintiffs' Tortious Interference Claim*

■ In the third count of their complaint, plaintiffs allege that defendants Hasbro and Bojar tortiously interfered with plaintiffs' agreements with Elson, specifically, the Patent Assignment Agreement, and with plaintiffs' prospective economic advantage. Hasbro's defense to this claim is predicated upon a Dutch court's opinion, dated October 7, 1988, which declared the contractual relationship between Elson and Global dissolved as of November 20, 1985. Hasbro contends that the Dutch court's judgment precludes an action for tortious interference with the Patent Assignment Agreement because this agreement was effectively dissolved before Hasbro came into contact with Elson and Elson's owner, van den Elshout. The Court agrees and will grant summary judgment in favor of Hasbro on plaintiffs' tortious interference claim. The Court will also grant summary judgment in favor of Bojar on the tortious interference claim, as plaintiffs have failed to carry their burden of pointing to any evidence in support of their claim that Bojar tortiously interfered with the Patent Assignment Agreement or induced Elson to bring an action dissolving that agreement.

The Dutch court action was prompted by a dispute between Elson and Global as to certain distribution agreements and Global's failure to pay royalty payments. Global's counterclaim consisted, in part, of the assertion that Elson breached its obligation to transfer the Lolobal patent under the May 6, 1985 Patent Assignment Agreement. The Dutch Court thus had the entire Global–Elson contractual relationship before it when the court declared all obligations dissolved because of Global's failure to pay royalty payments.

The dissolution of the Elson–Global contractual relationship is fatal to plaintiffs' tortious interference with contract claim because such a claim must be predicated upon the existence of a valid contract. *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.*, 614 F.2d 832, 834 (2d Cir.1980).

Plaintiffs dispute whether this Court should afford comity and collateral estoppel effect to the Dutch court's decision. The touchstone of both principles is whether the prior proceeding was essentially a fair one for the party now to be bound by its result. The Court finds that the Dutch court's decision was fair to Global and thus will consider its effect binding upon Global.

The Supreme Court has defined comity as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895), *quoted in Cunard S.S. Co. v. Salen Services AB*, 773 F.2d 452, 456 (2d Cir.1985). As the Third Circuit has explained:

> Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect.

*Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir.1971) (citing L. Orfield & E. Re, International Law 736–37 (1965)), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972).

The laws, public policy, and rights of citizens under United States law require that parties to a suit have a full and fair opportunity to present their cases. *See Cunard Steamship Company, Ltd. v. Salen Reefer Services AB*, 773 F.2d 452, 457 (2d Cir.1985). However, after such occasion all litigation should end. *Id.* at 457. Dutch courts have been found to be courts of competent jurisdiction, *Sea Dragon v.*

*Gebr. Van Weelde Scheepvaarkantoor,* 574 F.Supp. 367, 372 (S.D.N.Y.1983) (citing *Kenner Products v. Societe Fonciere et Financiere,* 532 F.Supp. 478, 479 (S.D.N.Y. 1982)); and the fairness of the Dutch court procedures does not depend on its similarity or dissimilarity with United States court procedure but only upon its basic fairness. *Ingersoll Milling Machine Co. v. Granger,* 833 F.2d 680, 688 (7th Cir.1987).

Plaintiffs have shown no special reason why it would be unfair for this Court to afford comity to the Dutch court's decision, which Global has not appealed. Plaintiffs do allege that civil procedure in United States federal court differs from civil procedure in courts of the Netherlands. Plaintiff relies upon *Compagnie Des Bauxites De Guinee v. L'Union,* 723 F.2d 357 (3d Cir.1983), to support the contention that because the Dutch proceeding did not allow for discovery, Global did not have a full and fair opportunity to present its case. *Bauxites,* however, can be readily distinguished. First, *Bauxites* is not a case concerning a foreign judgment. It involved a party whose right to discovery for the purpose of finding personal jurisdiction contacts was curtailed. The appellate court found that if the plaintiff in *Bauxites* was given a full opportunity for discovery, plaintiff would have unearthed sufficient contacts to satisfy the requirements of personal jurisdiction. In contrast, in the Dutch proceeding both parties were subject to the same rules of civil procedure, and Global had contracted to be bound by Dutch law in a Dutch venue. In addition, plaintiffs have brought forth no evidence before this Court showing that the decision rendered in the Dutch case would have been in Global's favor if discovery was available. For this same reason, the Dutch court's judgment should be accorded collateral estoppel effect on the issue of Global's lack of a contractual relationship with Elson as of November 20, 1985. The Restatement (Second) of Judgments states:

> Preclusion may be withheld when the party against whom it is invoked can avail himself of procedures in the second action that were not available to him in the first action and *that may have been significantly influential in determination of the issue. Differences in this regard include such procedures as discovery devices....*

Restatement (Second) of Judgments § 29 Comment d (emphasis added). The Court remains unconvinced that the lack of discovery devices was significantly influential in the Dutch court's decision to dissolve all contractual relations between Elson and Global. Global's violation of the distribution agreement was the decisive factor.

■ Plaintiffs also contend that collateral estoppel should not be accorded to the Dutch court because the inventors were parties to the Patent Assignment Agreement and thus were indispensable parties who were not joined. The Court finds, however, that the inventors were only nominal parties to the Patent Assignment Agreement and have not been prejudiced by the Dutch court's decision. The fact remains that the inventors were paid only two guilders to be part of the patent assignment agreement and did not receive anything else except for a promise that the patent rights they thought they owned were to be transferred to Global. By general principles of contract law the inventors were not material parties to the Patent Assignment Agreement and thus were not indispensable parties to the Dutch proceeding.

■ Finally, plaintiffs contend that even if the Patent Assignment Agreement is dissolved, defendants are liable because of their instigation of the judicial proceedings that rendered the agreement dissolved. Plaintiff notes Restatement (Second) of Torts, § 766 Comment f:

> *Voidable contracts.* The word "contract" connotes a promise creating a duty recognized by law. (See Restatement, Second Contracts § 1). The particular agreement must be in force and effect at the time of the breach that the actor has caused; and if for any reason it is entirely void, there is no liability for causing its breach. Furthermore, it must be applicable to the particular performance that the third person has been

induced or caused not to discharge. It is not, however, necessary that the contract be legally enforceable against the third person. A promise may be a valid and subsisting contract even though it is voidable. (See Restatement, Second, Contracts § 13). The third person may have a defense against action on the contract that would permit him to avoid it and escape liability on it if he sees fit to do so. Until he does, the contract is a valid and subsisting relation, with which the actor is not permitted to interfere improperly.

Although this statute may be applicable in holding a party liable for instigating a judicial proceeding that results in the dissolution of an agreement, plaintiffs have not brought forth sufficient evidence to create an issue of fact as to their contention that defendants did instigate the Dutch proceeding. The Third Circuit has stated:

> Where a party opposing a motion for summary judgment has the burden of persuasion, and the moving party has identified sufficient facts to demonstrate that no genuine issue of material fact remains, the nonmoving party is obliged to identify those facts of record which would contradict the facts identified by the movant.

*Childers v. Joseph*, 842 F.2d 689, 694–95 (3d Cir.1988). Plaintiffs merely point to the fact that certain meetings may have taken place prior to November 20, 1985 between defendant Bojar, Dennis Day, who was a founder of Global, and van den Elshout. Again, after three years of litigation, plaintiffs have submitted only speculation and not evidence that Bojar tortiously induced Elson to seek judicial dissolution of the Elson–Global agreements, and there is certainly no evidence of any involvement by Hasbro in the Lolobal machinations prior to November 20, 1985. Accordingly, summary judgment will be granted in favor of all defendants on plaintiffs' claim for tortious interference with contract.

### C. *Hasbro's Patent Infringement Counterclaim*

Because summary judgment will be granted in favor of defendants on all of plaintiffs' causes of action, the only issue that will remain in this case is Hasbro's counterclaims for infringement of U.S. Patent No. 3,716,229 against plaintiffs In–Tech and Global, and additional defendants on the counterclaim, Scott M. Shaw, the sole officer of In–Tech, Gerard Roos, the sole officer of Global, and John Blankensee, the general manager of Global. Hasbro has moved for summary judgment as to the liability of Global, In–Tech, Roos and Shaw for patent infringement.

■ Plaintiffs and counterclaim defendants' only current opposition to Hasbro's motion for summary judgment on the counterclaim is the contention that Global and Roos cannot be liable for patent infringement because neither party has made or directly sold an infringing article in the United States. This argument, though, cannot succeed in shielding Global and Roos from liability for contributory infringement under 35 U.S.C. § 271(b) or (c). *See, e.g., Nippon Electric Glass Co. v. Sheldon*, 489 F.Supp. 119, 122 (S.D.N.Y. 1980).

At this time, however, the Court will refrain from making a final pronouncement on patent infringement liability. The briefs and supporting documents for this motion were primarily concerned with plaintiff's claims and with ownership of the patent. The question of liability for Hasbro's counterclaim and the current pattern of Lolobal importation have been treated in only a cursory manner by the litigants, and there is no documentation, as of yet, on the extent of what Hasbro's damages might be. For this reason, it would be inappropriate at this time for the Court to make a final judgment as to liability. The question of which parties are properly held liable for Hasbro's counterclaim and the extent of such liability must be addressed in further proceedings.

### III. CONCLUSION

Summary judgment will be granted in favor of defendants on all six counts of plaintiff's complaint. The Court, however, will deny Hasbro's motion for summary

judgment as to Hasbro's counterclaim for patent infringement against Global, In-Tech, Shaw and Roos.