**Johanna Wilhelmina Maria VAN DEN BIGGELAAR, Plaintiff,**

v.

**James Allen WAGNER, Defendant.**

**No. 3:96 CV 00401 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 25, 1997.

Edward A. Sullivan, III, Baker and Daniels, South Bend, IN, Carl R. Pebworth, John Joseph Tanner, Kerry L. Jones, Baker and Daniels, Indianapolis, IN, for plaintiff.

Terry C. Shewmaker, Cosentino, Walker, Shewmaker and Christofeno, Elkhart, IN, for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This cause is before the court on Defendant's Motion for Summary Judgment and Plaintiff's cross-motion for Summary Judgment. Both parties have fully briefed the issues and provided all relevant information. In addition, the court heard oral argument on July 25, 1997. This court now rules as follows.

### JURISDICTION

Jurisdiction of this court is based upon 28 U.S.C. § 1332(a)(2), diversity jurisdiction. Plaintiff, Johanna Van Den Biggelaar (Biggelaar), is a citizen of the Netherlands residing in Velddriel, Municipality of Maasdriel, the Netherlands. Defendant, James Wagner (Wagner) is a citizen of Indiana residing in Elkhart County, Indiana. The amount in controversy exceeds the required statutory amount.[1]

---

1. This action was filed prior to the enactment of the 1996 amendment raising the statutorily re-

### PROCEDURAL HISTORY

The present cause of action arises out of a contract dispute between the parties. Plaintiff Biggelaar owns and breeds horses in the Netherlands. Defendant Wagner owns and breeds horses in the United States. Beginning in June, 1989, Biggelaar began boarding a number of horses in the Netherlands that were owned by Wagner. She provided a variety of services for Wagner relating to the management and sale of these horses. Wagner and Biggelaar had an agreement regarding the payment of expenses for boarding these horses and for the division of proceeds if a horse was sold. Each party maintained a record of their respective accounts. In addition to the above agreement, on July 10, 1989, Biggelaar entered into a separate lease agreement with Wagner for a particular stallion named "Gil". The lease payment was independent of the aforementioned transactions. Biggelaar paid and Wagner received the full amount for the lease of Gil. The lease agreement contained a mandatory choice of forum clause naming the Elkhart Circuit Court in the State of Indiana as the sole forum in the event of a dispute.

In late 1991 and early 1992, a dispute arose between Wagner and Biggelaar over the amount of money each owed to the other. The money issues concerned the boarding and sale of nine horses. The fees for the lease of Gil were not in dispute, however, other issues involving the lease apparently were. Wagner asserts that Biggelaar initiated all prior proceedings on October 29, 1991, when she requested the Dutch courts issue a writ of attachment against Gil. The writ was issued, but later canceled by the Dutch court. As a result of Biggelaar's writ, Wagner claims that he had no choice but to come to the Netherlands and defend himself against the attachment. However, the record indicates that the writ was canceled prior to the commencement of any further proceedings in the Dutch courts.

Wagner later filed an action for breach of contract against Biggelaar in the Elkhart Circuit Court pursuant to the forum selection clause contained in the lease contract. Biggelaar did not appear in this action. On January 16, 1992 a default judgment was issued against Biggelaar. The Indiana court found that Biggelaar had breached the lease agreement. It therefore ordered the stallion immediately returned to Wagner. In addition, the court reserved ruling on money damages and fees until the horse was returned.[2] According to the record, on February 13, 1992, Wagner obtained permission to levy a seizure on the stallion, Gil. This was served on Biggelaar on February 17, 1992. In defense, Biggelaar also levied a seizure on Gil claiming that she was entitled to possession until the term of the lease expired on July 10, 1992. This Seizure was served on Wagner on February 24, 1992. As a result of these actions, Wagner filed a lawsuit in the Dutch courts on February 27, 1992. The initial action was filed and heard in the District Court of 'S–Hertogenbosch of the Netherlands. In this action, Wagner asserted that Biggelaar had breached the lease agreement, overcharged for boarding fees, used monies inappropriately, and did not provide an accurate accounting regarding the sale of Wagner's horses in Biggelaar's charge. Wagner ultimately alleged that Biggelaar owed him $38,879.91. Biggelaar counterclaimed in the Dutch court. The court heard the evidence and issued a nine page ruling on December 3, 1993. The court found that it had not been established that Biggelaar acted in violation of the lease, that the writ of seizure was not in violation of the lease, but that Biggelaar owed Wagner $23,798.91. The court also ordered Biggelaar to pay an additional NLG 525.15 (Dutch guilders) for the expenses incurred by Wagner as regarded the seizure before judgment levied by Wagner against Biggelaar. The court then ordered that each party pay its own costs for this proceeding. In a separate ruling on Biggelaar's counterclaim the court rejected all that was claimed and ordered Biggelaar to pay costs to Wagner up to the amount of NLG 910.0 (Dutch guilders).

quired minimum to $75,000. However, the amount in controversy here is appropriate under either standard.

2. The horse was finally returned to Wagner and thereafter was sold. No further action was taken on the issue of fees and costs, however.

Biggelaar appealed the trial court's decision. Prior to the appeal Biggelaar was required by Dutch law to pay Wagner the amount levied in the trial court judgment. Biggelaar paid the full $23,798.91. The appeal was heard in the Court of Appeals of 'SHertogenbosch of the Netherlands, Second Chamber. A decision was rendered on October 13, 1995. The Dutch Court of Appeals issued a six page order explaining its ruling. In this order the court noted that "neither party has stated that either the laws of The Netherlands or the laws of the State of Indiana were applicable," (Order at p. 3, ¶ 4.1), and that the trial court had obviously applied the laws of The Netherlands. Like the lower court, the Appellate court held that Wagner had failed to prove that Biggelaar did not perform her contractual obligations. Additionally, it found that Wagner incurred no damages. The court also held that the term "lien" in the lease agreement did not include a "seizure before judgment" and could not be used to deprive a party of statutory measures to secure rights. The court then went on to discuss the dispute regarding the invoices, records and payments between Biggelaar and Wagner. The court found it disturbing that Wagner did not dispute any of Biggelaar's invoices between 1989 and 1991 until August of 1992. The Appellate Court then quashed the Trial Court judgment. It also ordered Wagner to pay costs estimated at NLG 3,050 (Dutch guilders) and to pay $29,578.87 to Biggelaar.

Wagner did not further appeal the Dutch Appellate Judgment, although the option was available to him. That judgment is now final and time for appeal has passed. Biggelaar brings the present action in this court seeking to enforce the judgment of the Dutch Appellate Court claiming that the judgment is final and binding and entitled to recognition as a matter of comity. Wagner filed a Motion to Dismiss, which this court converted to a Motion for Summary Judgment and which is now the basis for this ruling.

**3.** Although the Supreme Court later revisited the 1986 trilogy in *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law, the most that can be said for *Eastman Kodak* is that it did not tinker with *Celotex*

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762 (7th Cir.1993). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States.[3] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, with or without supporting affidavits, the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts which are material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Rule 56) (alteration added). The nonmoving party may not rest on its pleadings, *Waldridge v. American Hoechst Corp.*, 24 F.3d

*and Anderson,* and possibly involved an attempt to clarify *Matsushita.* This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441 (1992).

918, 920–21 (7th Cir.1994); *Hughes v. Joliet Correctional Ctr.,* 931 F.2d 425, 428 (7th Cir.1991), nor may the party resisting summary judgment rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin,* 28 F.3d 646, 650 (7th Cir.1994), *cert. denied,* 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638, (1995); *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991), *reh'g denied* 1993 WL 518446 (7th Cir.). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–55, 106 S.Ct. at 2511–14.

Where, as here, cross-motions for summary judgment have been submitted by the parties, the court is not required to grant judgment as a matter of law for one side or the other. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993); *Judsen Rubber Works, Inc. v. Manufacturing, Prod. & Serv. Workers Union Local No. 24,* 889 F.Supp. 1057, 1060 (N.D.Ill.1995). Rather, the court must evaluate each party's motion on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Heublein,* 996 F.2d at 1461;*Judsen,* 889 F.Supp. at 1060; *Buttitta v. City of Chicago,* 803 F.Supp. 213, 217 (N.D.Ill.1992), *aff'd,* 9 F.3d 1198 (7th Cir. 1993).

### DISCUSSION

The Supreme Court has never passed upon the question whether federal or state law governs the recognition of foreign nation judgments. However, the consensus among the state courts and lower federal courts is that, apart from federal question cases, such recognition is governed by state law. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 98 (1988 Rev. Main Vol. Pkt. Pt.). It is generally accepted that a Federal District Court sitting in a diversity action should apply state law in determining the conclusive effect of a foreign court judgment. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Ingersoll Milling Machine Co. v. Granger,* 631 F.Supp. 314 (N.D.Ill.1986), *aff'd,* 833 F.2d 680 (7th Cir.); *Svenska Handelsbanken v. Carlson,* 258 F.Supp. 448 (D.Mass.1966). Because this is a diversity action, the law of the forum with respect to comity should be applied. *British Midland Airways Ltd. v. Int'l Travel, Inc.,* 497 F.2d 869 (9th Cir.1974). Indiana law therefore controls whether this court should give effect to the prior Dutch judgment.

In a suit to enforce a foreign judgment, it is not necessary to allege jurisdiction of foreign court. Jurisdiction is presumed if the foreign court is of general jurisdiction and the presumption of jurisdiction of person inures to plaintiff's benefit unless rebutted by defendant. *Cunningham v. Universal Battery Division–Yardney Elec. Corp.,* 170 Ind.App. 166, 352 N.E.2d 83 (1976). However, Decisions issued by foreign jurisdictions are not entitled to automatic recognition or enforcement in the United States. *Pilkington Bros. P.L.C. v. AFG Indus. Inc.,* 581 F.Supp. 1039 (D.Del.1984). In the Dutch court action, Wagner was the plaintiff. Wagner filed suit in that court, was represented by competent counsel, presented evidence and obtained a ruling. The presumption of Dutch jurisdiction was not contested by Biggelaar, nor does she contest it now. The Dutch Trial Court ruled in favor of Wagner. Wagner did not object to jurisdiction. Biggelaar appealed the Trial Court's ruling. The Appellate Court quashed the lower court's ruling, and found in favor of Biggelaar. No challenge to jurisdiction was made by either party during the appeal. Biggelaar is now before this court seeking to enforce the Dutch Appellate Court judgment.

### I. WAGNER'S MOTION FOR SUMMARY JUDGMENT

In the present action, defendant Wagner for the first time challenges the jurisdiction of the Dutch courts. Wagner argues that because the lease contract between the parties included a mandatory forum selection clause, the Dutch courts' were precluded from ruling on the issues he brought before

it. Furthermore, Wagner claims the mandatory forum selection clause precludes this court from addressing the merits of this case and asks that the case be dismissed, or in the alternative, transferred to the Elkhart Circuit Court pursuant to the contract. This court converted Wagner's motion to dismiss to a Motion for Summary Judgment pursuant to Indiana Rules of Trial Procedure and Federal Rules of Civil Procedure, Rule 12(C).

### A. Contracts and Forum Selection

■ The enforceability of forum selection clauses in international agreements is governed by the Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Although *Bremen* was an admiralty case involving international parties, Wagner correctly points out that federal courts have consistently applied its analysis to cases involving only domestic parties and to causes of action other than admiralty. *Norman Security Sys., Inc. v. Monitor Dynamics, Inc.*, 740 F.Supp. 1364 (N.D.Ill.1990); *Friedman v. World Transportation, Inc.*, 636 F.Supp. 685, 689 (N.D.Ill.1986). While forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances," *Bremen*, 407 U.S. at 10, 92 S.Ct. at 1913, the *Bremen* Court further stated that such a forum-selection clause should not be enforced if "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision."[4] *Id.* at 15, 92 S.Ct. at 1916; *Horner v. Tilton*, 650 N.E.2d 759 (Ind.Ct.App.1995). Applying this reasoning, the court will consider Wagner's request to now assert the contractual forum selection clause.

### 1. Jurisdiction

■ Personal jurisdiction is waivable and parties can, through such measures as forum selection clauses, easily contract around rules promulgated for determining whether personal jurisdiction exists in breach of contract action involving nonresident defendants. U.S.C.A. Const. Amend. 14; *RAR, Inc. v. Turner Diesel, Inc.*, 107 F.3d 1272 (7th Cir.1997); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). However, such a waiver is itself waiveable. *Fagan v. Washington*, 942 F.2d 1155, 1157 (7th Cir.1991); *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 663–64 (7th Cir.1986), *cert. Denied by Apollo of Ozarks, Inc. v. Giotis*, 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987); *Lektro–Vend Corp. v. Vendo Co.*, 545 F.2d 1050, 1059 (7th Cir.1976), rev'd on other grounds, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977); *Conway v. Village of Mount Kisco*, 758 F.2d 46, 48 (2d Cir.1985). The Supreme Court recognizes that both venue and jurisdiction over the person may be waived. *See Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); *see also, Rice v. Nova Biomedical Corp.*, 38 F.3d 909 (7th Cir.1994), *reh'g denied(1995)*, *cert. denied, Nova Biomedical Corp. v. Rice*, 514 U.S. 1111, 115 S.Ct. 1964, 131 L.Ed.2d 855; *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293 (7th Cir.1993). Indiana courts hold that once a non-resident defendant voluntarily appears and seeks affirmative relief from a trial court the defendant is estopped to deny the trial court's jurisdiction over it. *Adams v. Budgetel Inns, Inc.*, 550 N.E.2d 346 (Ind.Ct.App.1990); *reh'g denied, transfer denied* (1991); *see also, Sanson v. Sanson*, 466 N.E.2d 770 (Ind.Ct.App.1984)(by failing to challenge personal jurisdiction over him before pleading the defendant waived that issue); *Richardson v. Slough*, 128 Ind.App. 428, 148 N.E.2d 423 (1958)(where non-resident principal defendant in an attachment action made a general appearance, court acquired complete jurisdiction over the cause and the non-resident); *New Albany Mfg. Co. v. Sulzer*, 29 Ind.App. 89, 63 N.E. 873 (1902)(non-resident defendant in attachment who appeared and answered thereby submitted himself to court's jurisdiction). Additionally, this reasoning is recognized in the RESTATEMENT (THIRD) FOREIGN RE-

---

4. The *Bremen* court noted that a defendant who consents to a forum selection clause waives only his right to request a transfer on the ground of his own inconvenience. He does not surrender his right to object to venue which is otherwise burdensome to the witnesses or contrary to the interest of justice. 407 U.S. at 17, 92 S.Ct. at 1917.

LATIONS LAWS § 421(3)[5] and the Uniform Foreign Money Judgment Recognition Act (UFMJR) § 5(a)(2), note 4, 13 U.L.A. 261, 272 §§ 1–9 (West 1962 & Supp.1994).[6]

On the record before it, this court must determine whether Wagner's forum selection clause was waived. This case is similar to many cases in this circuit. In *Frietsch v. Refco, Inc.*, 56 F.3d 825 (7th Cir.1995), the court found that the plaintiffs waived an argument, namely the forum selection clause, by not making it until after the district court had dismissed the suit. Similarly, in *GATX Leasing Corp. v. National Union Fire Ins. Co.*, No. 94 C 431, 1994 WL 529370, at *1 (N.D.Ill. Sept. 27, 1994), *aff'd*, 64 F.3d 1112 (7th Cir.1995), at trial, National Union raised a choice-of-law issue, and GATX opted not to respond to its arguments, despite "ample opportunity." The court held that GATX's failure to address the choice-of-law issues during trial could be considered a waiver. *See also, Whirlpool Financial Corp. v. Sevaux (Whirlpool III)*, 1995 WL 153313, at *3 (N.D.Ill.), *aff'd*, 96 F.3d 216 (7th Cir.1996) (holding that plaintiffs, who had failed to introduce affidavit of German law until after the suit had been dismissed, waived its application); *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir.1995) (noting that, "[w]here neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law."); *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1336 (7th Cir.1992), *reh'g denied* (considering appeal in underlying litigation and stating that claims that could have been raised prior to judgment may not be raised for the first time in Rule 59(e) motion); *Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1231 n. 1 (7th Cir.1985) (noting that acquiescence to court's choice of law amounts to waiver of any objection to such choice).

United States law and public policy both favor recognition of the Dutch Court's jurisdiction. There is absolutely nothing in the Dutch court records that even remotely suggests Wagner challenged its jurisdiction or even attempted to enforce the contract choice of law clause. In fact, the Dutch Appellate Court specifically pointed out that neither party discussed what law applied. Moreover, there is nothing pertaining to the Dutch proceedings that violates due process. An historical line of cases beginning with *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877), govern the proper exercise of "foreign" jurisdiction.[7] Wagner certainly had the requisite "minimum contacts" with the Netherlands. Moreover, because Wagner availed himself of the Dutch court, he cannot claim that the maintenance of the suit "offends traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. As in *Denckla, supra* note 6, Wagner voluntarily associated with the forum state.

Furthermore, our United States courts have found the Dutch courts to be courts of competent jurisdiction, *See Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.*, 955 F.2d 368, (5th Cir. 1992); *Belcher Co. Of Alabama, Inc. v. M/V Maratha Mariner*, 724 F.2d 1161 (5th Cir. 1984); *Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243 (5th Cir.1983), *reh'g denied*, 724 F.2d 976 (1984); *Hoffman v. Goberman*, 420 F.2d 423 (3d Cir.1970); *Beekmans v. J.P. Morgan & Co.*, 945 F.Supp. 90 (S.D.N.Y.,

---

5. This section states: A defense of lack of jurisdiction is generally waived by any appearance by or on behalf of a person or thing (*whether as plaintiff or defendant*, or third party), if the appearance is for a purpose that does not include a challenge to the exercise of jurisdiction. *Emphasis added*

6. The Act states Where the defendant appears voluntarily the Act recognizes jurisdiction is proper unless the appearance is for the purpose of protecting property seized or threatened with seizure in the proceedings or of contesting the jurisdiction of the court over the defendant. The UFMJR is discussed in detail, *infra*.

7. *See also, International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (*1945*); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223(1957); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), *reh'g denied*, 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92; *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Burnham v. Superior Court of California*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990).

1996); *In re Extradition of Glantz,* 1995 WL 495644 (S.D.N.Y.1995); *Cliffs–Neddrill v. M/T Rich Duke,* 734 F.Supp. 142 (D.Del. 1990); *Sea Dragon v. Gebr. Van Weelde Scheepvaartkantoor,* 574 F.Supp. 367, 372 (S.D.N.Y.1983) (*citing Kenner Products v. Societe Fonciere et Financiere,* 532 F.Supp. 478, 479 (S.D.N.Y.1982)). Furthermore, the fairness of the Dutch court procedures does not depend on its similarity or dissimilarity with United States court procedure but only upon its basic fairness. *Ingersoll Milling Machine Co. v. Granger,* 833 F.2d 680, 688 (7th Cir.1987).

█ Based on both applicable law and public policy considerations, it is this court's opinion that Wagner waived his right to contest the jurisdiction of the Dutch court when he voluntarily filed his action there and proceeded to litigate the issues. Therefore, his summary judgment motion based on lack of jurisdiction must fail.

## 2. Res Judicata

█ Res judicata is designed to ensure the finality of judicial decisions. *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589 (7th Cir.1986). The basic elements of a claim preclusion theory of res judicata are: a former judgment must have been rendered by a court of competent jurisdiction; the matter now in issue was or might have been determined in the former suit; the particular controversy adjudicated in the former action must have been between parties to the present suit or their privies; and judgment in the former suit must have been rendered on the merits.[8] *Kieler v. C.A.T. by Trammel,* 616 N.E.2d 34 (Ind.Ct.App.1993) *reh'g denied, transfer denied; Kokomo Med. Arts Bldg. Partnership v. William Hutchens and Assoc.,* 566 N.E.2d 1093 (Ind.Ct.App.1991); *Gorski v. Deering,* 465 N.E.2d 759 (Ind.Ct. App.1984). The doctrine of *res judicata* holds that "[a] final judgment on the merits

of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). This doctrine rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

Assuming *arguendo,* Wagner did not waive the forum selection clause, his motion for summary judgment still fails. In this case, Wagner was previously a plaintiff in the Elkhart Circuit Court. In that action, the court found Biggelaar in breach of the contract pertaining to the lease of Gil via a default judgment. Wagner then filed an action in the Dutch Court based on the lease and other issues. Some of the dispute allegedly related to the boarding and sale of other horses, not the lease of Gil. If those issues were not governed by the contract, they could not become such simply by lumping them together in new legal action. Being outside the contract, those claims would properly fall under the jurisdiction of the Dutch courts and would not be *res judicata.* Furthermore, Wagner should have claimed *res judicata* in the Dutch court. Absent proof, it is assumed that the principles of *res judicata* in the foreign court were similar to those found in the United States. *McCord v. Jet Spray Intern. Corp.,* 874 F.Supp. 436 (D.Mass.1994).

█ Additionally, in the current cause of action, *res judicata* does not apply because Biggelaar is not seeking to re-litigate the same issues in this court. Where a default judgment is entered, only those issues presented by the complaint can be deemed concluded; the defaulting party cannot be charged with admitting matters not within the complaint by his default. *Pence v. Long,*

---

8. Fairness dictates that if the judgment is by default then the issue is not precluded in a subsequent suit. *See Grip–Pak, Inc. v. Illinois Tool Works, Inc.,* 694 F.2d 466, 469 (7th Cir.1982), *cert. denied,* Illinois; *Frye v. United Steelworkers of America,* 767 F.2d 1216, 1220 (7th Cir.1985), *cert. denied,* 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 461. The Restatement of Judgments deals with this matter, stating that only a particular issue which has been actually litigated may later be precluded; furthermore an issue decided by default is not considered a litigated issue. *See* RESTATEMENT OF JUDGMENTS § 68 (1942); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982).

38 Ind.App. 63, 77 N.E. 961 (1906); 17 I.L.E. Judgment, Sec. 375, at 412 (1959); 47 Am. Jur.2d Judgments, Sec. 1202 at 216 (1969). As stated by the United States Supreme court in *Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 275, 56 S.Ct. 229, 233, 80 L.Ed. 220 (1935), "[a] cause of action on a judgment is different from that upon which the judgment was entered." *Accord, Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 61 S.Ct. 513, 85 L.Ed. 725 (1941), *reh'g denied*, 313 U.S. 598, 61 S.Ct. 840, 85 L.Ed. 1550. Biggelaar's action before this court is one to enforce the prior Dutch judgment not one to contest the contract issues. *Res judicata* therefore does not apply.

■■■■ Moreover, even where the technical requirements of *res judicata* have been established, a court may nonetheless refuse to apply the doctrine. *International Harvester Co. v. Occupational Safety Comm'n*, 628 F.2d 982 (7th Cir.1980) This circuit does not adhere to a rigid view of the doctrine. *Res judicata* must yield on occasion to competing public policies. *Id.* at 986; *see Spilker v. Hankin*, 188 F.2d 35, 38–39 (D.C.Cir.1951). At the very least, potential issues of fact remain regarding whether all of the litigated issues were governed by the lease contract and therefore summary judgment based on Wagner's *res judicata* claim is inappropriate.

## II. *VAN DEN BIGGELAAR'S CROSS-MOTION FOR SUMMARY JUDGMENT*

■■■■ It is well established that United States courts are not obliged to recognize judgments rendered by a foreign country, but may choose to give *res judicata* effect to foreign judgments on the basis of comity.[9] *Alesayi Beverage Corp. v. Canada Dry Corp.*, 947 F.Supp. 658 (S.D.N.Y.1996), *aff'd* 122 F.3d 1055, No. 96–9718, 1997 WL 539768 (2d Cir. Sept.3, 1997). If a final judgment is reached first in the foreign court, it can then be pled as *res judicata* in the domestic court. *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir.1987).[10]

### A. Comity

The doctrine of international comity, or mutual respect of sovereigns, requires courts of one nation to avoid, where possible, interfering with courts of another. *Matter of Rimsat, Ltd.*, 98 F.3d 956 (7th Cir.1996). The concept of Comity was developed in the Netherlands, especially by Ulrich Huber, in the last quarter of the 17th Century "to mediate between the pretensions of territorial sovereignty and the needs of international commerce." Hessel E. Yntema, *The Comity Doctrine*, 65 Mich. L.Rev. 9 (1966); Sol Picciotto, *Networks in International Economic Integration*, 17 NW. J. Int'l L. & Bus. 1014 (Winter–Spring 1996–1997). In the United States, the comity concept was imported by Joseph Story but later modified into a discretionary principle with an ambiguous status between law and policy. Joel Paul, *Comity in International Law*, 32 Harv. Int'l L.J. 1 (1991). The Supreme Court of the United States defined comity as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of

9. United States Courts will recognize foreign judgments under the doctrine of comity, as contrasted to any constitutional requirement such as affording full faith and credit to the judgments of the courts of sister states. *See Aetna Life Ins. Co. v. Tremblay*, 223 U.S. 185, 32 S.Ct. 309, 56 L.Ed. 398 (1912); *de la Mata v. American Life Ins. Co.*, 771 F.Supp. 1375 (D.Del.1991), *aff'd*, 961 F.2d 208 (3d Cir.1992). "The first section of Article IV of the Constitution confers the right to have full faith and credit given in each state to the public acts, records and judicial proceedings in every other state. No such right, privilege or immunity, however, is conferred by the Constitution or by any statute of the United States in respect to the judgments of foreign states or nations...." Furthermore, the matter of recognition and enforcement of foreign nation judgments is not governed by treaty or federal statute.

10. Other cases holding or recognizing that judgments of courts of foreign countries were entitled to conclusive effect in Federal District Courts on the basis of the American principles of *res judicata* or collateral estoppel: *Ackerman v. Ackerman*, 517 F.Supp. 614 (S.D.N.Y.1981), *aff'd*, 676 F.2d 898 (2d Cir.1982); *In Tech Marketing, Inc. v. Hasbro, Inc.*, 719 F.Supp. 312 (D.C.N.J.1989), *reconsideration dismissed; Flota Maritima Browning v. Motor Vessel Ciudad de la Habana*, 218 F.Supp. 938 (D.C.Md.1963), *aff'd*, 335 F.2d 619 (4th Cir.1964); *Zorgias v. S.S. Hellenic Star*, 487 F.2d 519 (5th Cir.1973); *Steinweg Nachf v. Steinway & Sons*, 523 F.2d 1331 (2d Cir.1975).

another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895); *Societe Nationale v. United States District Court,* 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987); *Purnell v. Missouri Dept. of Corrections,* 753 F.2d 703 (8th Cir.1985). In *Hilton,* the Supreme Court held that if the foreign forum provides a full and fair trial before a court of competent jurisdiction, under a system of procedural fairness akin to the principles governing United · States courts, and there is nothing to show either prejudice or fraud in the foreign forum, then "the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh ... upon the mere assertion of [a] party that the judgment was erroneous in law or in fact." *Hilton,* 159 U.S. at 202–03, 16 S.Ct. at 158; *Ma v. Continental Bank N.A.,* 905 F.2d 1073 (7th Cir. 1990), *cert. denied,* 498 U.S. 967, 111 S.Ct. 430, 112 L.Ed.2d 414; *Canadian Imperial Bank of Commerce v. Saxony Carpet Co., Inc.,* 899 F.Supp. 1248 (S.D.N.Y.1995), *aff'd,* 104 F.3d 352 (2d Cir.1996).

■ While the extension or denial of comity is discretionary, *Remington Rand Corp.-Delaware v. Business Sys., Inc.,* 830 F.2d 1260 (3d Cir.1987), *aff'd by, Kilbarr Corp. v. Business Sys. Inc.,* 869 F.2d 589 (3d Cir.1989); *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440 (3d Cir.1971), *cert. denied,* 405 U.S. 1017, 92 · S.Ct. 1294, 31 L.Ed.2d 479, a domestic court normally will give effect to executive, legislative, and judicial acts of a foreign nation.[11]

*Somportex,* 453 F.2d at 440. (Foreign default judgment could not be given comity unless the person affected was given notice and opportunity to be heard in foreign proceedings.); *Bank Melli Iran v. Pahlavi,* 58 F.3d 1406 (9th Cir.1995)(U.S. court may not recognize judgment of court of a foreign state if the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with due process of law.)

■ *Hilton* is the seminal case in the area of enforcement of foreign judgments. It articulates the requisite criteria for a finding of comity to permit the recognition and enforcement of a foreign judgment. Those criteria are:

1. Opportunity for a full and fair trial

2. Trial before a court of competent jurisdiction

3. Proceedings following due citation or voluntary appearance of adversary parties

4. Trial conducted upon regular proceedings

5. Trial under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries.

6. No evidence to demonstrate

   a. Fraud in the procuring of the judgment ·

   b. Prejudice in the system of laws in which the court was sitting

   c. Prejudice in the court

**11.** Some of the cases holding that comity was the basis for granting extraterritorial effect in Federal District Courts: *Burnham v. Webster* F. Cas. No. 2179 (CC Me. 1846); *De Brimont v. Penniman,* F. Cas. No. 3715 (C.C.N.Y.1873), *Ennis v. Smith,* 55 U.S. 400, 14 How. 400, 14 L.Ed. 472 (1852)(Lithuanian); *Hilton,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895); *Ritchie v. McMullen,* 159 U.S. 235, 16 S.Ct. 171, 40 L.Ed. 133 (1895)(Canadian); *Harrison v. Triplex Gold* · *Mines,* 33 F.2d. 667 (1st Cir.1929)(Canadian); *Shikoh v. Murff,* 257 F.2d 306 (2d Cir.1958)(Pakistan); *Perrin v. Perrin,* 408 F.2d 107 (3d Cir.1969)(Mexican); *Somportex,* 453 F.2d 435 (3rd Cir.1971); *Gioe v. Westervelt,* 116 F. 1017 (C.C.S.D.N.Y.1902)(Italian); *Strauss v. Conried,* 121 F. 199 (C.C.S.D.N.Y.1902)(Austrian); *In-Tech Marketing,* 719 F.Supp. 312 (D.N.J.1989) *Royal Baking Powder Co. v. Hessey,* 76 F.2d 645 (4th Cir.1935), *cert. denied,* 296 U.S. 595, 56 S.Ct. 110, 80 L.Ed. 421 (U.S.Md.1935); *Abdul-Rahman Omar Adra v. Clift,* 195 F.Supp. 857 (D.C.Md.1961); *Hunt v. BP Exploration Co., Ltd.,* 492 F.Supp. 885 (N.D.Tex.1980); *Compania Mexicana Rediodifusora Franteriza v. Spann,* 41 F.Supp. 907 (D.C.Tex.1941), *aff'd,* 131 F.2d 609 (5th Cir.)(Mexican); *Velsicol Chem. Corp. v. Hooker Chem. Corp.,* 230 F.Supp. 998 (D.C.Ill. 1964); *Cherun v. Frishman,* 236 F.Supp. 292 (D.D.C.1964)(Canadian).

d. Any other special reason why comity of the United States should not allow full effect.[12]

Applying this analysis, the court considers the Dutch Court proceedings.

### 1. Full and Fair Trial

■ Similar to proceedings in this country, the Dutch trial court heard the case before a single judge. The court issued a nine page ruling and listed all of the documents the parties submitted to the court for consideration. The record indicates that Wagner presented an amended claim. The court found that Biggelaar must pay $23,-798.91 to Wagner. It also found that Wagner had not established Biggelaar's failure to perform or breach of contract. (Opinion at ¶ 6.1—6.9). The court detailed the issues of the dispute. The record shows that the court considered the lease contract as well as other business dealings between the parties. (Opinion at ¶ 2.1—5.3). Additionally, the court ruled on Biggelaar's counterclaims and rejected all of them. It is this court's opinion that the Dutch Trial Court conducted a full and fair trial on the issues before it.

Biggelaar exercised her right of appeal, and the case was taken to the Dutch Court of Appeal. Biggelaar listed three specific objections to the lower court ruling. (Opinion at ¶ 2). The Court of Appeal addressed all three. Wagner submitted a memorandum and reply asserting his objections. *Id.* The court of appeal issued a six page ruling that expressly addressed the issues. In its ruling, the Dutch court specifically addressed the definition of the term "lien", which was the cause of the lease dispute regarding Gil. Using a process very similar to our courts, the Dutch court found that Wagner attempt-ed to interpret the contract too broadly. (Opinion at ¶ 4.2). It is again clear from this record that both parties received a full and fair trial at the appellate level. As this court pointed out *supra*, the fairness of the Dutch court procedures does not depend on its similarity or dissimilarity with United States court procedure but only upon its basic fairness. *Ingersoll Milling*, 833 F.2d 680, 688.

### 2. Jurisdiction

This court has extensively discussed the jurisdictional issue *supra*, and will not do so again here. It is this court's opinion that jurisdiction was proper based on the factors discussed previously.

### 3. Voluntary Appearance

Similarly, as discussed *supra*, it is this court's opinion that Wagner's dealings with the Dutch courts were voluntary. He filed suit there. He obtained appropriate counsel there. He litigated all of his issues there.

### 4. Regular Proceedings

Based on the record before this court, there is no question that both the Trial Court proceedings and the Appellate Court proceedings were conducted pursuant to the appropriate procedure of the Netherlands. There is nothing to indicate that anything out of the ordinary occurred.

### 5. Impartial Administration of Justice

There is nothing in the record that indicates anything other than the proper and impartial administration of justice in both Dutch proceedings. The Trial Court found for Wagner. Biggelaar paid Wagner pursuant to the trial court's judgment as required by Dutch law prior to filing for appeal. Wagner accepted payment, thereby accept-

---

12. These criteria, however, do not end the analysis for the recognition of a foreign judgment. *Hilton* also holds that reciprocity with regard to the conclusiveness afforded a U.S. judgment in a foreign country is required. However, the rule of reciprocity has been severely criticized. Courts and commentators have almost universally rejected or ignored the doctrine that reciprocity should be required as a precondition to the recognition and enforcement of a foreign country's judgment. *de la Mata*, 771 F.Supp. at 1382. One of the earliest cases that expressly rejected the *Hilton* reciprocity requirement was *Johnston v. Compagnie Generale Transatlantique*, 242 N.Y. 381, 152 N.E. 121 (1926). Section 98 of the Restatement (Second) of the Conflicts of Laws does not require reciprocity. Further, in *Bank of Montreal v. Kough*, 612 F.2d 467 (9th Cir.1980) the Ninth Circuit noted that the drafters of the Uniform Foreign Money Judgment Recognition Act (UFMJR), 13 U.L.A. 261 (1991). consciously rejected reciprocity as a factor to consider in recognition of foreign money judgments. This is apparently on the ground that due process concepts embodied in the Act were an adequate safeguard for the rights of citizens sued on judgments obtained abroad.

ing the trial court's judgment. An appropriate appeal was filed. The Appellate Court found for Biggelaar. Wagner had an opportunity to challenge that finding and chose not to do so.

### 6. Evidence of Fraud

There is absolutely no evidence suggesting fraud or any impropriety on the part of the Dutch courts.

Based on the foregoing factors, it is this court's opinion that Biggelaar has a valid claim seeking to enforce the Dutch Appellate Court's judgment. It is also this court's opinion that the principle of comity applies.

### B. Recognition of Foreign Judgments

In 1962, the National Conference of Commissioners on Uniform State Laws and the American Bar Association adopted the Uniform Foreign Money Judgment Recognition Act (UFMJR), codifying State rules that had long been applied by the majority of courts in the United States.[13] See UNIFORM FOREIGN MONEY–JUDGMENTS ACT §§ 1–9, 13 Uniform Laws Annotated 261 (West 1962 & Supp.1994). Under the Act "a foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." Those standards of "full faith and credit" which the Constitution requires sister states to accord one another are, of course, the standards of res judicata.[14] Van Kooten

13. The UFMJR should not be confused with the Uniform Foreign Judgments Act, 13 U.L.A. 181 (1948), which by its terms applies only to judgments rendered in a state or territory of the United States. However, in applying the UFMJR to foreign country judgments, courts have often looked to the language in § 3 of that Act and interpreted it to mean that foreign country judgments receive the same recognition sister state judgments. 13 U.L.A. 261 § 3; Matthew H. Adler, If We Build It, Will They Come?—The Need For a Multilateral Convention on the Recognition and Enforcement of Civil Monetary Judgments, 26 Law & Pol'y Int'l Bus. 79 (Fall 1994).

14. Many lawyers seem to believe that a foreign country money judgment is not worth the paper it is written on. This belief is unfounded. Although not all jurisdictions have independently codified the UFMJR, the Act may be looked on as the "state of law" throughout the United States. The goal of the Act was to increase the likelihood that foreign countries would recognize the judgments of our American courts. Because many

Holding B.V. v. Dumarco Corp., 670 F.Supp. 227 (N.D.Ill.1987) (action seeking to enforce Dutch judgment). The Act applies to any foreign judgment that is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal. Section 3 of the Act makes any such judgment "conclusive between the parties to the extent that it grants or denies recovery of a sum of money." See Lugano Convention on Jurisdiction and Enforcement of Judgments in Civil and Commercial Matters, September 16, 1988, 28 I.L.M. 620 (1989).[15]

Section 4 of the Act sets out three mandatory defenses to recognition and six discretionary defenses:

§ 4. Grounds for Non–Recognition

(a) A foreign judgment is not conclusive if

(1) the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

(2) the foreign court did not have personal jurisdiction over the defendant; or

(3) the foreign court did not have jurisdiction over the subject matter.

13 U.L.A. 261. None of the mandatory non-recognition defenses apply to the present cause of action. The remaining six defenses are discretionary:

foreign countries, whose law is rooted in the civil law tradition, will accept only a statute as evidence of reciprocity, the Commissioners saw fit to craft this statute making it more likely that judgments rendered here will be recognized abroad. See 13 U.L. A. 26 1, Prefatory Notes; Alan J. Sorkowitz, Enforcing Judgments Under the Uniform Foreign Money Judgments Recognition Act, 37 NO. 5 Prac. Law. 57 (July 1991).

15. To date, twenty-five states have expressly adopted the provisions of the Act with or without modification: Alaska, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Mexico, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Texas, Virginia and, Washington. Nineteen of those states adopting the Act specifically reject the doctrine of reciprocity. The other six, Florida, Georgia, Massachusetts, Texas, Idaho and Ohio, have modified the Act to include reciprocity.

(b) A foreign judgment need not be recognized if

(1) the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend;

(2) the judgment was obtained by fraud;

(3) the [cause of action] [claim for relief] on which the judgment is based is repugnant to the public policy of this state;

(4) the judgment conflicts with another final and conclusive judgment;

(5) the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or

(6) in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of that action.

*Id.* Of these six defenses, only § (b)(4) & § (b)(5) could possibly pertain to the present case. As discussed in detail *supra*, it is this court's opinion that defendant Wagner waived any claim he may have had under either of those sections when he appeared before the Dutch courts, fully litigated his issues and accepted a money judgment from Biggelaar. Therefore, discretion dictates that this court should not now consider either of these defenses.

## IV. CONCLUSION

For the foregoing reasons, Defendant Wagner's Motion for Summary Judgment is hereby **DENIED**. Plaintiff Biggelaar's Cross-Motion for Summary Judgment is hereby **GRANTED**. This court further finds the judgment of the Dutch Court of Appeals enforceable. Defendant Wagner is hereby ordered to pay the sum of $83,497.38 to Biggelaar. Pursuant to the "American Rule [16]" applicable in Indiana, each party is responsible for its own costs and attorney fees.

IT IS SO ORDERED.

**16.** *Alyeska Pipeline Serv. Co. v. Wilderness Soc.,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Board of Comm'rs v. Wyant,* 672 N.E.2d 77 (Ind.Ct.App.1996), *reh'g denied; Drake v. Mitchell Community Schools,* 649 N.E.2d 1027 (Ind.1995).